# CHEELY & Others v. CLAYTON.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

Submitted January 10th, 1884.—Decided March 10th, 1884.

*Divorce.*

A decree of divorce from the bond of matrimony, obtained by a husband in a Territorial Court, upon notice to his absent wife by publication, insufficient to support the jurisdiction to grant the divorce under the statutes of the Territory, as repeatedly and uniformly construed by the highest court of the State after its admission into the Union, is no bar to an action by the wife, after the husband's death, in the Circuit Court of the United States, to recover such an estate in his land as the local statutes give to a widow.

This was a writ of error sued out by Sarah A. Clayton and her tenant, Richard Mackey, citizens of Colorado, to reverse a judgment of the Circuit Court of the United States for the District of Colorado, in an action brought against them by Sarah A. Clayton, describing herself a citizen and resident of Illinois, and widow and heir-at-law of James W. Clayton, deceased, to recover a tract of land in the County of Jefferson

and State of Colorado, and a lode, mining claim and quartz mill in Gilpin County in that State, and the rents, issues and profits thereof.

Trial by jury having been duly waived, the case was tried by the court, which found the following facts :

"1st. That the plaintiff and James W. Clayton intermarried at Wheeling, in the State of Virginia, on the 3d of May, 1855.

"2d. That on the first day of March, 1867, the said James W. Clayton filed his bill for divorce against the said plaintiff in the District Court of Gilpin County, Colorado Territory, which was a court of competent jurisdiction in that behalf ; that the cause alleged in said bill as ground for divorce was that the said James W. Clayton had in 1863 taken the defendant therein, the plaintiff in this suit, to the State of Illinois, and that she had refused to return to Colorado, and had refused to live with said James W. Clayton, although he had often requested her to do so, and had offered to furnish to her a home and sufficient maintenance in Colorado.

"3d. That the plaintiff in this suit was, on the said first day of March, 1867, and thereafter until the present time, a citizen and resident of the State of Illinois.

"4th. That at the time of filing said bill in the District Court of Gilpin County, a summons was issued out of said court, directed to the sheriff of said Gilpin County to execute, commanding him to summon the said plaintiff to answer the said bill, which summons was in all respects as required by the law of the Territory then in force regulating such matters.

"5th. That the sheriff of Gilpin County, on the same first day March, 1867, returned the said summons into the said District Court of Gilpin County with his indorsement thereon that the defendant therein, the plaintiff in this suit, was not found in his county.

"6th. That a notice of the pendency of said suit in the said District Court of Gilpin County was published in a weekly newspaper printed and published in the said Gilpin County, for four weeks, beginning with and next after the first day of March, 1867 ; and the first publication of said notice was more than thirty days before the return day of said summons ; that the certificate showing such publication was to the effect that the first publication of

such notice was on the 1st of March, 1867, and the last publication was on the 26th of March, 1867 ; that said certificate was filed in said cause on the 22d of March, 1867.

" 7th. That the defendant in the said divorce suit (the plaintiff in this suit) was not notified of the pendency thereof except as aforesaid.

" 8th. That a decree was entered in the said suit, brought in the said District Court of Gilpin County, on the 26th of June, 1868, divorcing the said James W. Clayton from the defendant therein (the plaintiff in this suit), which said decree recites at the comment thereof that it appearing to the court that due service had been had upon said defendant before the 4th of April, 1867, and that such service had been made, according to the laws of the Territory of Colorado and the rules and practice of that court, more than ten days previous to the first day of the April term of said court, and that the defendant was called and defaulted.

" 9th. That the said James W. Clayton and the defendant in this suit, Sarah A. Clayton, intermarried in the year 1870, at and within the State of Colorado.

" 10th. That the said James W. Clayton departed this life about the 10th of October, 1874, leaving the said plaintiff, and two children, issue of his marriage with the said plaintiff, him surviving.

" 11th. That at and before the time of his death the said James W. Clayton was seized in fee of the premises described in the complaint as situated in Jefferson County.

" 12th. That at and before the time of his death the said James W. Clayton was the owner of the premises described in the complaint as situated in the County of Gilpin, and in virtue of such ownership was entitled to hold, occupy and possess the same.

" 13th. That the value of the use and occupation of the said premises since the 3d of April, 1877, and the rents, issues, and profits thereof, as to the undivided one-half part thereof, is seventeen hundred and twenty-five dollars."

Upon the facts so found, the court made the following rulings and conclusions in matter of law :

" First. That because the said defendant therein (the plaintiff in this suit) was not properly notified of the pendency of said.

suit in the District Court of Gilpin County, the decree of divorce entered therein was and is void and of no effect.

"Second. That the said plaintiff in this suit, in virtue of her marriage with the said James W. Clayton, was and is, with the surviving children before mentioned, his heir at law, and as such is entitled to one-half part of his estate.

"Third. That the said plaintiff is the owner in fee of the undivided one-half part of the estate described in the complaint as situated in Jefferson County.

"Fourth. That the said plaintiff is the owner and under the laws of the State is entitled to hold, occupy and possess the undivided one-half part of the estate described in the complaint as situated in Gilpin County.

"Fifth. That the said plaintiff is entitled to recover of the said defendants, as and for the rents, issues, and profits of said premises, and damages for the detention thereof, the said sum of seventeen hundred and twenty-five dollars."

Judgment was accordingly rendered for the plaintiff on March 3d, 1879; and the defendants tendered a bill of exceptions, and sued out this writ of error. The plaintiff in error Clayton having died since the entry of the case in this court, her heirs have been made parties in her stead.

*Mr. Willard Teller* for plaintiffs in error.

*Mr. L. C. Rockwell* for defendant in error.

MR. JUSTICE GRAY delivered the opinion of the court. After reciting the facts in the foregoing language, he continued:

The true question in this case is, which of the two Sarah A. Claytons was the lawful wife of James W. Clayton at the time of his death, and as such entitled by the statutes of Colorado to inherit one-half of his real estate. Revised Statutes of 1867, ch. 23; General Laws of 1877, ch. 26. In order to avoid the confusion arising from the identity of name, from their transposition on the docket of this court, and from the death of one of them pending the writ of error, it will be convenient to designate them, as in the record of the court below, the defendant in error as the plaintiff, and the plaintiff in error as the

defendant. Mackey, the other plaintiff in error, occupied the land as tenant only, and needs no further mention.

The courts of the State of the domicil of the parties doubtless have jurisdiction to decree a divorce, in accordance with its laws, for any cause allowed by those laws, without regard to the place of the marriage, or to that of the commission of the offence for which the divorce is granted; and a divorce so obtained is valid everywhere. Story Conflict of Laws, § 230 *a ; Cheever* v. *Wilson,* 9 Wall. 108; *Harvey* v. *Farnie,* 8 App. Cas. 43. If a wife is living apart from her husband without sufficient cause, his domicil is in law her domicil; and, in the absence of any proof of fraud or misconduct on his part, a divorce obtained by him in the State of his domicil, after reasonable notice to her, either by personal service or by publication, in accordance with its laws, is valid, although she never in fact resided in that State. *Burlen* v. *Shannon,* 115 Mass. 438; *Hunt* v. *Hunt,* 72 N. Y. 218. But in order to make the divorce valid, either in the State in which it is granted or in another State, there must, unless the defendant appeared in the suit, have been such notice to her as the law of the first State requires.

The decree of divorce set up in this case was obtained before the admission of Colorado into the Union, and under the Revised Statutes of 1867 of the Territory of Colorado.

By chapter 26 of those statutes, relating to divorce and alimony, each District Court of the Territory, sitting as a court of chancery, had jurisdiction, upon the like process, practice and proceedings as in other cases in chancery, to decree a divorce from the bond of matrimony to either husband or wife, for the other's wilful desertion and absence for one year without reasonable cause.

Chapter 13 of the same statutes, relating to chancery proceedings, contained the following provisions: By §§ 5, 6, upon the filing of the bill the clerk was to issue a summons, returnable at the next term after its date, directed to the sheriff of the county in which the defendant resided, if a resident of the Territory, requiring him to appear and answer the bill on the return day of the summons. By § 7, service of the summons

was to be made by reading it to the defendant, or leaving a copy with one of his family at his usual place of abode, ten days before the return day. By § 8, whenever any complainant filed in the clerk's office an affidavit showing that a defendant resided or had gone out of the Territory, the clerk was to cause notice to be published in a newspaper in the Territory for four successive weeks, the first publication to be made at least thirty days before the return day. At the end of that section was this clause: "But this proceeding shall not dispense with the usual exertion, on the part of the sheriff, to serve the summons." By § 9, if thirty days intervened between the filing of such affidavit and the return day, or if service of process was made, and the defendant did not appear on the return day, the bill might be taken for confessed. By § 10, if the case was continued for want of due publication or service, the like proceeding might be had at the next term as might have been had at the first term. By § 11, if the summons was not returned, executed, on the return day, the clerk might issue a further summons. By § 12, the complainant might cause personal service to be made, on any defendant residing or being out of the Territory, not less than thirty days before the commencement of the term at which he was required to appear; and such service, proved by affidavit, was to be as effectual as if made in the usual form within the limits of the Territory. By § 15, any defendant, not summoned or notified to appear, as above required, and against whom a final decree should be entered, might within one year after notice to him in writing of the decree, or within three years after the decree, if no such notice should be given him, apply to the court and obtain a hearing, as if he had seasonably appeared and no decree had been made; and at the end of three years the decree, if not so set aside, should be deemed and adjudged confirmed against him, and the court might make such further order in the premises as should be requisite and just.

Under those statutes, as repeatedly and uniformly construed by the higher courts of Colorado, when the sheriff returns the summons on the day of its date, instead of keeping it in his possession until the return day for the purpose of making the

usual exertions to serve it, a notice by publication only will not sustain a decree.

The Supreme Court of the Territory, at February Term, 1873, in *Palmer* v. *Cowdrey*, 2 Colorado, 1, and *Wise* v. *Brocker*, Ib. note, reversed decrees in ordinary proceedings in chancery for such a defect, and assigned its reasons as follows:

"The law intends that service of the summons shall be made on the defendant, if he can be found within the jurisdiction during the life of the writ. If the defendant is not in the county at the time the summons is placed in the hands of the officer, he may come into the county before the return day, and if notice by publication has been given, it is nevertheless the duty of the officer to serve the summons, if he can find the defendant in his bailiwick. To the performance of this duty it is necessary that the officer should retain the summons in his hands until the return day; for after the return of *non inventus* of course the officer cannot obey the command of the writ. In the present case the sheriff returned the summons more than one month before the return day, and thereafter he could not comply with the statute by making the usual exertion to serve it. Whether the defendant came into the county after the return and during the life of the writ, we do not know, nor can we be informed except by the return of the proper officer. By the return as it stands in the record, it does not appear that service could not have been made during the life of the writ, and the court had no authority to proceed upon notice by publication without such evidence." 2 Colorado, 6.

Since the admission of Colorado into the Union, the Supreme Court of the State, at December Term, 1877, made a like decision, for the same reasons, and said:

"Without holding the writ until the return day and a proper return accordingly, the publication of notice will not avail to confer jurisdiction upon the court to render final decree upon the petition." *Vance* v. *Maroney*, 4 Colorado, 47, 49.

Upon the strength, and as the necessary result, of those decisions, the Supreme Court of the State has twice held that

decrees of divorce, obtained under such circumstances, were wholly void, for want of jurisdiction in the court that granted them; that the provision of the statute, allowing a defendant, on whom constructive service only had been made, to apply within three years to set aside the decree, did not make the decree valid when the constructive service was so defective; and that such a decree of divorce was no bar to an action by the wife to recover as the husband's widow a share of his real estate. One of the cases in which it was so held, decided at December Term, 1878, before the judgment of the Circuit Court in the case at bar, was an action by this plaintiff against this defendant and the administrator of James W. Clayton, in which the defendants set up the decree of divorce now in question. *Clayton* v. *Clayton*, 4 Colorado, 410. The other is a very recent decision, not yet officially published. *Israel* v. *Arthur*, 7 Colorado.

The fact that the statutes of the Territory, relating to chancery proceedings, having been repealed by the Code of Civil Procedure of the State of Colorado, were no longer in force at the time of the last two decisions, does not lessen the weight of those decisions of the highest court of Colorado as evidence of the law of Colorado upon the construction of its statutes affecting the status of citizens of the State, and the title in, or right of possession of, land within its limits.

That James W. Clayton was a citizen of Colorado is necessarily implied in the record, and especially in the finding of the court below that the Territorial court had jurisdiction to entertain his application for divorce; and it is the very foundation of the argument in support of this writ of error. But the service in the proceedings for divorce was exactly the same as was held insufficient to support the jurisdiction of the court to make a decree in each of the cases in the Colorado Reports, above cited. The notice and return, appearing of record in the proceedings for divorce, control the general recital in the decree that due service had been made upon the defendant therein. *Galpin* v. *Page*, 18 Wall. 350; *Settlemier* v. *Sullivan*, 97 U. S. 444.

The decree of divorce being void for the insufficiency of the

service, and the status of Clayton and this plaintiff therefore that of husband and wife, according to the law of Colorado, as declared by its highest court, she was entitled as his widow to the share which the law of that State gives to a widow in the husband's land within the State.

We do not rest our judgment merely upon the ground that the land of which possession is demanded is in Colorado; for, if the parties had been domiciled and divorced elsewhere, the question whether they were husband and wife at the time of his death might, even as affecting her right in his land in Colorado, have been governed by the law of their domicil, although the share which a widow should take in her husband's land would of course be determined by the law of the State in which the land was. See *Meister* v. *Moore*, 96 U. S. 76; *Ross* v. *Ross*, 129 Mass. 243, 247, 248, and cases cited.

Nor do we give any weight to the finding of the court below that the wife, at the time of the proceedings for divorce, was a citizen and resident of the State of Illinois; for it is hard to see how, if she unjustifiably refused to live with her husband in Colorado, she could lawfully acquire in his lifetime a separate domicil in another State; or how, if the Territorial court had jurisdiction to render the decree of divorce, and did render it upon the ground of her unlawful absence from him, the finding of the court below could consist with the fact so adjudged in the decree of divorce.

However that may be, the wife, since the husband's death, had the right to elect her own domicil, and at the time of bringing the present action was a citizen of Illinois, and as such entitled to sue in the Circuit Court of the United States. And the ground upon which we affirm the judgment of that court is, that by the law of Colorado, as declared by the Supreme Court of the State, the decree of divorce was void, for want of the notice to her required by the local statutes.

There could hardly be a better illustration of the fitness and justice of this conclusion than is afforded by the facts of this case. To reverse the judgment of the Circuit Court would be to leave the status of the plaintiff, as widow and heir of James W. Clayton, established by the State court as to one parcel of

land, and denied by this court as to other lands within the same State. It was said in argument, indeed, that part of the land sought to be recovered was the same in both actions; but this does not appear upon the record before us.

> *Judgment affirmed.*